# Case No. 10,027.

## The NASSAU.

[Blatchf. Pr. Cas. 601.] ¹

District Court, S. D. New York. Jan. 17, 1864.

PRIZE—PRACTICE—FEE BILL—COMPENSATION OF COUNSEL—FOR WHAT EMPLOYED.

1. The fee bill of February 26, 1853, discussed, in its application to prize suits.

2. The prize acts of March 25, 1862 (12 Stat. 375), and July 17, 1862 (12 Stat. 608), considered as affecting fees to counsel for the captors.

3. Congress intended, by these acts, that the employment of counsel in prize cases, in order to warrant their compensation out of the prize fund, should be for the assistance of the district attorney, and in protection of the interests of the captors in common, and should be authorized or recognized by the secretary of the navy.

4. The court in this case refused to charge on the prize fund the bill of costs of a counsel employed by the captors, who did not bring himself within this rule.

[This case was first heard upon motion of libelants to sell cargo as in a perishing condition. Case No. 10,025. Subsequently a decree of condemnation was entered. Case No. 10,026. It is now heard upon the question of taxation of costs.]

BETTS, District Judge. As some novel questions of law and practice have arisen in

¹ [Reported by Samuel Blatchford, Esq.]

this case, the court has reserved the disposition of them for a few days in order to have an opportunity to state the reasons governing the decision rendered. Should the present condition of the law on the subject remain, and prize captures continue to be brought before the courts for adjudication, it may become important to the profession to understand the principles upon which the adjustment of costs in cases similar to this will be made by the court.

The above suit was instituted July 12, 1862, conformably to the usual course of practice, in the name of the United States, and by the attorney of the United States of this district officially. In form and character, it is an action within the admiralty cognizance of this court, and under the sole superintendence and control of the district attorney (1 Stat. 92, § 35; 2 Stat. 761, § 6; 10 Stat. 166, § 3; 12 Stat. 375), over which no other officer possesses any legal control, except it be conferred by statutory authority. In the progress of the suit, as appears by the papers on file, Mr. Arnoux, Mr. Sandford, and Mr. Upton, counsellors of the court, became concerned as counsel for the captors in the cause, under retainer directly, either by the commanding officers of the capturing vessel or by the secretary of the navy. The action was placed upon the trial docket of this court at the • November term thereafter, and was brought to a final hearing at the December term, 1862, and the vessel and cargo were then condemned and forfeited as prize of war by decree of the court. The district attorney, Mr. Upton, and Mr. Sandford have each presented bills of costs in their own behalf for substantially the same items of services in the suit, in conducting it from its inception to its termination, claiming the right to have those costs adjusted and paid to them in the character of counsel for the libellants, under the provisions of the third section of the act of congress approved March 25, 1862. Mr. Arnoux has not as yet formally presented his bill in that capacity, although he has made known to the court his relation to the cause. The bills of costs prepared by the district attorney and Mr. Upton have been heretofore adjusted by the court, and, it is presumed, have been regularly acted upon by the accounting officers of the government. That of Mr. Sandford, now under consideration, stands upon circumstances distinguishable in important particulars from the claims of the district attorney and Mr. Upton, and their allowance supplies no authority or precedent, determining the course to be followed in respect to other officers of the court, holding only the relation of counsel for individual captors. The differences will be further adverted to subsequently. Counsel, merely in that character, have no provision made for them in the standing fee bill, regulating their fees or costs in suits in court, and either fixing the amount or the mode of recovering the same. 10 Stat. 161. District

attorneys are recognized therein in transacting the usual business of a suit, only in the capacity of attorneys, and are compensated as such. Id. § 1. That statute has been generally understood to have codified into positive enactments the vague allowances of costs to the officers of court designated in the act, and to have annulled the system for some time prevailing in the federal courts to compensate legal services by fees given at discretion by the courts. The first section expressly declares that the compensation fixed by statute shall be in lieu of all other rates or modes of allowance in the courts of the United States, reserving the right to solicitors, attorneys, and proctors to bargain with their clients, and receive, in addition to taxable costs, such reasonable satisfaction as may be agreed between the parties, or may be in accordance with general usage within the state where the services are rendered. By sections 3 and 5 all contradictory provisions of law are repealed; and it would be difficult, since the passage of that fee bill, to uphold any rate of charges for law services, resting upon the usage or practice of admiralty or prize courts, variant from the existing fee bill.

The argument in support of the bill of costs submitted to me for approval proceeds mainly on the assumption that the costs claimed are granted by the third section of the act of March 25, 1862. If this position be tenable, the claimant is of course relieved from the restrictions of the fee bill of 1853, and stands upon the ground of quantum meruit, or upon the rule of custom or usage, as to the rate of his counsel fee, so far as that guide may yet exist in this court on the subject. The act of March 25, 1862, has not yet been the subject of judicial interpretation in this respect, that I am aware of. It is painfully obscure in some of its vital provisions. The face of the third section does not limit the number of suitors who may come into a prize litigation individually, and be guaranteed their expenses out of the general fund on condemnation of the prize, whether they personally, or the vessel with which they were connected. had any concern in the capture or not; and the question must arise whether the court can avoid recognizing each man of a crew, or of a squadron, or of an entire fleet, as a competent party to be represented in court by counsel, and compelling compensation to such counsel without regard to the necessity of his aid or its intrinsic value. In this particular instance, three distinct counsel claim to be representatives of two officers of the capturing ships. They show no express appointment from any other individual. No authority from the sub-officers and crews appears upon the files empowering those two persons to intervene and represent the body of captors, nor any that would entitle the other men composing the equipages of the capturing vessels to place themselves in the same attitude with those officers, and come into the suit in their own right, as captors. Mr. Upton alone acts under an appointment embracing the rest of the crew. By virtue of the act of July 17, 1862, the secretary of the navy authorized Mr. Upton to act in behalf of the unrepresented crew, which in this case is the whole of them. Official letter of the secretary of the navy of September 6, 1862. The language of the third section authorizes the fund to be charged with counsel fees for "the counsel for the captors." Can the commanding officers of separate ships claim to themselves a right to these fees without authentic powers of attorney from each member of the crew? or can they, virtute officii, represent the whole crew, and collect their distributive shares out of the prize proceeds? These and other uncertainties are not solved by the terms of the law, and must, therefore, be determined by legal construction of the meaning and purpose of the legislature. If that intention fails to be disclosed in the enactment itself, it may be sought in concurrent legislation in pari materia, and the more directly coincident in point of time a concurrent enactment may follow, the more impressive and effective it will become as a key of interpretation. On the 17th of July, in the same session, congress passed an enabling or declaratory clause respecting the prosecution of prize suits, providing, among other things, that "the secretary of the navy is hereby authorized to appoint an agent, or to employ counsel when the captors do not employ counsel themselves, in any case in which he may consider it necessary, to assist the district attorneys and protect the interests of the captors, with such compensation as he may think just and reasonable." 12 Stat. 608, § 12. This authority was executed by the secretary of the navy in the official letter above referred to. The secretary enumerates several conditions accompanying the appointment—"that of furnishing such information as the department may require in relation to cases pending or to be brought before the court," and "that the services would be expected to continue in every case, without further charge, until a termination of judicial proceedings." In reading together the concurrent clauses of these two acts, a strong implication is afforded that congress meant that the retainer and employment of counsel in prize causes, in order to warrant them compensation out of the prize fund, should be for the assistance of the district attorney in the suit, and in protection of the interests of the captors in common; and, in that way, and in so far as they are acting under the recognition and authority of the secretary of the navy, either by his direct selection, or their employment by the captors themselves, in cases in which he may consider it necessary, they would be entitled to compensation as provided in the law. The act of March 3, 1863 (12 Stat. 760, § 4), repealing and explaining the prior enactments

referred to on this subject, affords strong evidence that the prior provisions were only intended to cover and be "confined to compensation for such services as may be rendered necessary by reason of the captors having interests conflicting with those of the United States, and proper, in the opinion of the court, to be represented by separate counsel from those representing the United States."

I do not consider that the legislation of congress in regard to prize suits has annulled the principles of practice governing admiralty cases, and also equity and common law actions. The courts possess and will exercise their inherent powers to restrain, in cases presenting numerous parties possessing common rights of action or defense, the crowding of the pleadings and records of the court with multitudes of persons not necessary to determine the rights in litigation. Neither will parties be permitted to encumber and embarrass the proceedings of the courts by the introduction of needless numbers of proctors, solicitors, or attorneys into the control of, or interference with, the actings of the courts. A suitor may undoubtedly employ, at his own expense, attorneys or counsel at his discretion, but the court, when appealed to, must prevent the burden of such charge being transferred to and placed upon the subject in litigation, arbitrarily, at the discretion of particular suitors. I think that this suit, having been commenced in the name of the district attorney, and Mr. Upton, under the appointment of the secretary of the navy, having assisted in conducting the prosecution, from its institution, in favor of the captors, and having had the adjustment and payment of his costs therefor out of the proceeds of the prize, prior to the presentation of Mr. Sandford's bill of costs for allowance, and no order of the court, or of the secretary of the navy, having previously made, connecting him, as counsel for the captors, with the suit, his claim cannot be lawfully adjusted by the court and charged upon the fund. Under these circumstances, his retainer, by the captors named, was a personal one, and they are individually liable to him, if at all, for his professional services. In that respect, such services may be eminently valuable to captors. Unjust and unreasonable charges brought against the fund may be defeated or diminished; the claims of competitor captors, or their counsel may be avoided; and the proceeds of the prize within the jurisdiction of the court may, through the watchfulness and diligence of the counsel for the captors, be protected from important losses through illegal disbursements in its collection or keeping, or improvident delays on the part of agents who hold it in possession without prompt distribution. It is those extrinsic acts of supervision and control which it must generally be most useful to have wisely and actively performed for captors by their counsel; and the court cannot intend that congress meant that each captor should be entitled to appoint counsel ad libitum, who should receive a full bill of costs out of the prize fund.

The written argument submitted by Mr. Sandford in this case was able and satisfactory. My certificate to his bill of costs is not withheld because of the inadequateness or want of force and pertinency of the argument, but on the ground that I do not consider his legal relation to the cause as authorizing the court to tax his costs against this fund. The distinction between the efficacy of the consent of the district attorney to the taxation of the gross bill of costs to Mr. Sandford, and the assent of the same officer to the taxation of Mr. Upton's costs, is, that the latter holds his connection with the suit directly through statutory appointment. It is proper to remark; that although I decline to allow Mr. Sandford's costs against the proceeds in court in this suit, without exceptions to the items charged in the bill, I do not mean to be understood as passing any opinion upon the legality or justness of those allowances. Those questions have never yet arisen before me for judicial determination. An allowance for compensation to the United States attorney has been adjusted by the court, in obedience to the peremptory terms of the third section of the act of March 25, 1862, but on the construction of all the laws applicable to the subject that he could not be paid, by virtue of the taxation and because of his services in prize cases, any sum exceeding his official salary; and, in respect to the counsel appointed by the secretary of the navy, his compensation was fixed, under the statute, by that officer, and was not originally taxable by the court. The question will, therefore, be open for adjudication before the court, in any cases arising on the taxation of costs to counsel for captors in prize suits, unaffected by any previous action of the court.

The opinion of the court in the present case, therefore, is, that the costs demanded by Mr. Sandford are not taxable by the court against the fund in this suit.